**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>       Plaintiff<br><br>vs.<br><br>DIGITIRE PROFESSIONALS, LLC,<br><br>       Defendant. | Case No. 3:25-cv-01794-SRU |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR, ALTERNATIVELY, FOR LIMITED
<u>THRESHOLD DISCOVERY AND EARLY SUMMARY JUDGMENT SCHEDULE</u>**

**<u>INTRODUCTION</u>**

Defendant's motion asks the Court to do two things that courts routinely decline to do in TCPA actions at the pleadings stage: first, disregard well-pleaded allegations that Plaintiff's cellular telephone number is residential and protected by the National Do Not Call provisions of the TCPA; and second, impose an inefficient, artificially segmented discovery structure centered around Defendant's preferred factual defense.

The Complaint plainly alleges that Plaintiff's cellular telephone number is a non-commercial residential number used for personal, residential, and household purposes and that the number has long been registered on the National Do Not Call Registry. ECF No. 1 ¶¶ 17-20. Those allegations are more than sufficient under Rule 12(b)(6). Courts nationwide—including courts within this Circuit—have repeatedly held that allegations of residential use are adequate to

state a TCPA claim and that disputes concerning whether a number is "residential" or "business" are fact-intensive questions inappropriate for resolution on a motion to dismiss.

Unable to overcome the allegations in the Complaint, Defendant instead relies on extrinsic materials and factual assertions concerning alleged historical business use of Plaintiff's number from 7 years ago. But even Defendant's own authorities recognize that such issues cannot ordinarily be resolved on the pleadings. Moreover, Plaintiff's declaration directly addresses the FMCSA/USDOT records relied upon by Defendant and explains that the number at issue is Plaintiff's personal cellular telephone number, that Plaintiff publicly maintained a separate business number, and that any incidental business association with the subject number ceased years ago.

Defendant's alternative request for "threshold discovery" and early summary judgment fares no better. Defendant seeks to stay class and third-party discovery while litigating an individualized factual defense concerning Plaintiff's number. But TCPA courts routinely reject such requests because merits and class issues substantially overlap, bifurcation creates duplication and inefficiency, and delaying discovery increases the risk of lost evidence and prejudice to putative class members. Indeed, Judge Spector recently adopted the opposite sequencing approach in another TCPA action involving Mr. Newell, directing discovery toward class-certification-related issues before later merits proceedings.

Because Plaintiff plausibly alleges that his number is residential under the TCPA, because Defendant's contrary arguments merely raise factual disputes inappropriate for Rule 12(b)(6) resolution, and because Defendant has failed to justify its proposed segmented discovery procedure, the motion should be denied in its entirety.

## BACKGROUND

Plaintiff Jourey Newell brings this action under the Telephone Consumer Protection Act ("TCPA") arising from Defendant Digitire Professionals, LLC's repeated telemarketing text messages sent to Plaintiff's cellular telephone number despite that number being listed on the National Do Not Call Registry. ECF No. 1 ¶¶ 1-5. Plaintiff alleges that Defendant transmitted the messages without prior express written consent and seeks relief individually and on behalf of a putative nationwide class. *Id.* ¶¶ 3-5.

The Complaint alleges that Plaintiff's cellular telephone number is a non-commercial number used for personal, residential, and household purposes. ECF No. 1 ¶¶ 17-19. Specifically, Plaintiff alleges that the number is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses. *Id.* ¶ 18.

According to the Complaint, Plaintiff's cellular telephone number has been listed on the National Do Not Call Registry since March 19, 2025. ECF No. 1 ¶ 20. Plaintiff further alleges that he never consented to receive telemarketing calls or text messages from Defendant, never did business with Defendant, and never inquired about Defendant's products or services. Id. ¶¶ 21, 27.

Despite the absence of consent, Defendant allegedly sent Plaintiff at least six telemarketing text messages during August and September 2025. ECF No. 1 ¶ 22. The messages were transmitted from telephone number (860) 775-7298. Id. ¶ 23. Screenshots attached to the Complaint depict multiple promotional text messages advertising Defendant's tire products and pricing. *Id.* ¶ 24.

The Complaint alleges that the purpose of the text messages was to promote Defendant's goods and services and encourage purchases from Defendant. ECF No. 1 ¶ 25. Plaintiff further alleges that the messages were sent more than thirty days after his telephone number was registered on the National Do Not Call Registry. *Id.* ¶ 26.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

I.      **Plaintiff Plausibly Alleges that his Telephone Number is a Residential Number Protected by the TCPA.**

The TCPA's National Do Not Call provisions protect "residential telephone subscribers." 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Plaintiff expressly alleges that his cellular telephone number is residential and used for personal, residential, and household purposes. ECF No. 1 ¶¶ 17-19. This is a straightforward issue with a straightforward result. *Huber v. Pro Custom Solar, LLC*, 2020 U.S. Dist. LEXIS 87025 at *12 (M.D. Pa. May 18, 2020) (cleaned up) is on point. In *Huber*, the Court noted that, in less detail than here:

4

> Plaintiff's complaint submits, 'Plaintiff Huber's telephone . . . is a residential telephone line' and 'is not associated with a business and is for personal use.' These straightforward, unequivocal, declarative statements present allegations of fact which must be taken as true at the pleading stage. Taking all allegations as true, Plaintiff has met his burden to show that this telephone line is a residential telephone line[.]

Numerous other cases are in accord. *See, e.g.*, *Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use."); *Becker v. Pro Custom Solar LLC*, No. 19-cv-535, 2020 U.S. Dist. LEXIS 14310 (M.D. Fla. Jan. 29, 2020).

A more detailed analysis supports that. How does the FCC, the agency charged with implementing rules for Do Not Call Registry,[1] define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). This language excludes only one type of service—telephone exchange service for businesses—from the protections afforded by the DNC. The fact the regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive. And Mr. Newell has confirmed in his Declaration that he is a subscriber to a telephone exchange service for consumers, not one for businesses, consistent with his allegations. Newell Decl. ¶¶ 2-5.

---

[1] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers.*" *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*. Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.").

The residential number presumption has been recognized by Courts nationwide. *See, e.g.*, *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *5 (C.D. Cal. Nov. 21, 2017) (denying MTD for personal cell on DNC); *Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (same); *Phillips v. Mozes, Inc.*, No. 2:12-CV-04033-JEO, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014) (holding that allegation that cell phone was registered on DNC created reasonable inference of residential use); *Doyle v. JTT Funding, Inc.*, No. LACV1806145JAKASX, 2019 WL 13037025, at *8 (C.D. Cal. Dec. 2, 2019) (judgment for plaintiff).

At the pleadings stage, this is sufficient under 12(b)(6). But even crediting the Defendant's allegations for which it does not develop any contrary factual support, the Plaintiff does not hold his number out as a business line. *See* Newell Decl. ¶¶ 9-15**.** *See Clauss v. Legend Sec., Inc.*, No. 4:13-CV-00381-JAJ, 2014 U.S. Dist. LEXIS 184286, 2014 WL 10007080, at *2

6

(S.D. Iowa Sept. 8, 2014) (finding that the issue of whether the subject phone line was residential or business was a disputed fact even after discovery and that summary judgment was therefore inappropriate).

On this point, *Bank*, cited by the Defendant, is not particularly availing. In *Bank v. Indep. Energy Grp. LLC*, the Court at the pleadings stage *denied* the motion to dismiss, holding:

> Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. If Defendants are correct about the ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss.

No. 12-CV-1369, 2014 WL 4954618, at \*4 (E.D.N.Y. Oct. 2, 2014). Later, after the defendant provided evidence as to the business use of the number, the Court cited to multiple facts, not present here, for its conclusion that, at the time of the alleged calls, the plaintiff:

> [H]eld out the Subject Telephone to the public as a business line. Specifically, Bank provides the Subject Telephone number on his business card, professional letterhead for his law practice, and in pleadings and court filings, and he provides it to clients, prospective clients, other attorneys, and business contacts. He also maintains his attorney registration through the New York Unified Court System utilizing the Subject Telephone number as his contact number.

*Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at \*2 (E.D.N.Y. July 23, 2015). That's practically all *Bank* had to say on the matter, and no part of the decision addressed either way the effect of returning a previously mixed-use number to solely residential use, as are the circumstances here. In any event, Mr. Newell didn't do the things as the plaintiff in *Bank*.

Furthermore, the defendant also cites to *Owens v. Starion Energy, Inc.*, 2017 U.S. Dist. LEXIS 101640 (D. Ct. 2017), where Judge Bolden *denied* the Defendant's motion to dismiss. In so holding he held:

> Taking as true all of the factual allegations in the Complaint, as is required at this stage, *see York*, 286 F.3d at 125, the Court cannot conclude that Ms. Owens has failed to state a claim for relief under the TCPA. As Starion Energy points out in their motion to dismiss filings, the Complaint does not include Ms. Owens' full phone number, [*10] nor does it allege that the number in question functions primarily as a business number. Rather, the Complaint exclusively describes the telephone number in question as Ms. Owen's "home" or "residential" telephone number. Accordingly, the Court cannot conclusively determine at this early stage was truly "residential" or "business" for purposes of TCPA protection.

*Id.* at *9-10.

Defendant next argues that because the text messages advertised truck tires, Plaintiff's number necessarily must have been a business number. That argument fails. The TCPA focuses on the status and use of the called party's number—not on the content of the telemarketing message. Telemarketers routinely send irrelevant or mistaken solicitations to consumers. The fact that Defendant marketed commercial products does not establish that Plaintiff's number was a business line. Indeed, accepting Defendant's argument would improperly allow telemarketers to evade TCPA liability merely by asserting that they believed a consumer's number related to business activity. Moreover, Plaintiff specifically alleges that he never did business with Defendant and never consented to receive the messages. ECF No. 1 ¶¶ 21, 27.

At bottom, Defendant asks the Court to disregard the Complaint's well-pleaded allegations and resolve disputed factual questions concerning the nature and use of Plaintiff's telephone number at the pleadings stage. Because Plaintiff plausibly alleges that his cellular telephone number is a residential number protected by the TCPA, and because Defendant's contrary assertions merely raise factual disputes inappropriate for resolution under Rule 12(b)(6), the motion should be denied.

II.    **Defendant's Extrinsic Evidence Cannot Defeat the Complaint at the Pleadings Stage. Furthermore, the Plaintiff's Declaration Refutes it or Explains it.**

8

Defendant relies heavily on purported FMCSA/USDOT records and its characterization of the text messages themselves to argue that Plaintiff's number is supposedly a business number. But those materials do not conclusively establish anything, and at most create factual disputes.

First, as discussed above, Plaintiff expressly alleges that his number is residential and used for personal purposes. ECF No. 1 ¶¶ 17-19. The Court must accept those allegations as true.

Second, the existence of some alleged historical or incidental business association does not categorically remove TCPA protection. Courts recognize that cellular numbers may be mixed-use and still qualify as residential under the TCPA. The TCPA does not define the criteria used to determine whether a telephone number used for both personal and business activity is residential. *See* 47 U.S.C. 227; *see also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022). In 2003, the FCC ruled that numbers assigned to cellular telephones and placed on the "do not call" list are presumed to be residential. *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003)). The FCC subsequently declined to make a blanket exception to the rule for "home-based businesses," instead saying simply that it will determine whether a "mixed-use" phone is a residential line on a case-by-case basis. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3793 (2005)). The Second Circuit has not previously addressed this issue, but a majority of the courts that have done so, have found that cellular phones may be residential lines for purposes of the TCPA, even if the phone is also used for business matters. *See e.g. Mantha v. Quotewizard.com, LLC*, 2021 U.S. Dist. LEXIS 245059, 2021 WL 6061919 (D. Mass. Dec. 13, 2021) (granting summary judgment to a plaintiff who was the

subscriber for a cellular telephone he used while working for his employer); *Sagar v. Kelly Auto. Group, Inc.*, 2021 U.S. Dist. LEXIS 227781, 2021 WL 5567408 (D. Mass. Nov. 29, 2021) (rejecting argument that the FCC erred in ruling cellular telephones can be residential lines under the TCPA).

Finally, Plaintiff has submitted a declaration directly addressing the internet records and FMCSA materials relied upon by Defendant. Specifically, Plaintiff confirms that the number at issue is his personal cellular telephone number, that he maintains and publicly holds out a separate business number for commercial purposes, and that he does not hold the subject number out publicly as a business line. Newell Decl. ¶¶ 2-5, 9-12.

Plaintiff further explains that any incidental association between the subject number and prior business activity ceased no later than 2019, that Newell Landscaping is no longer an active business entity, and that the DOT-related listing cited by Defendant resulted from an administrative registration entry rather than any public-facing business use of the number. Id. ¶¶ 13-15. At minimum, these facts demonstrate the existence of disputed factual issues that cannot properly be resolved on a Rule 12(b)(6) motion.

Indeed, Defendant's motion ultimately depends on factual inferences concerning how Plaintiff used or held out his cellular telephone number during the relevant time period. Those issues are inherently factual and cannot be resolved against Plaintiff at the pleadings stage.

III.    **Discovery Should not be Bifurcated. If it is, Bifurcation Should be Limited to the Class Issues in this Case, as Judge Spector Recently did in Another TCPA Case Involving Mr. Newell.**

a.    **Individual merits and class discovery overlap in TCPA cases, so bifurcation is not appropriate.**

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[W]here there is a significant overlap in the evidence pertaining to the claims to be separated, bifurcation will not serve judicial economy." *ABB Indus. Systems, Inc. v. Prime Technology, Inc.,* 32 F.Supp.2d 38, 43 (D. Conn. 1998) (citing *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir. 1984)). "[T]he movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Svege,* 329 F.Supp.2d at 284.

Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015).  That is readily apparent here. Defendant does not merely seek a temporary limitation on discovery. Instead, Defendant asks the Court to impose a multi-stage litigation structure involving: (1) purported "threshold" discovery into whether Plaintiff's number is "residential"; (2) an early summary judgment motion directed to that issue; (3) a stay of class discovery and third-party discovery pending resolution of that motion; and then, if Plaintiff prevails, (4) a second round of merits and class discovery. That proposal would complicate—not simplify—this litigation. As an initial matter, request to limit discovery initially to its preferred issues is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying virtually identical request to bifurcate in a TCPA case).  "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Id.*

11

Furthermore, the supposed "threshold" issue identified by Defendant substantially overlaps with both merits and class issues already present in the case. Defendant itself proposes discovery into: whether Plaintiff used the number for business purposes; whether the number appeared in business records or public databases; whether Plaintiff received commercial communications at the number; and how Defendant obtained the number. But those same issues overlap directly with merits questions concerning Defendant's telemarketing practices, Defendant's sourcing and use of lead data, Defendant's asserted belief regarding the character of the number, willfulness, and the propriety of Defendant's telemarketing campaign generally.

Defendant's proposal meaningfully "limited." Defendant seeks discovery into Plaintiff's business history, alleged commercial contacts, public listings, reimbursement practices, vendor communications, and multiple categories of historical business usage extending years before the messages at issue. That is individualized merits discovery by another name. The Court would then be required to supervise a separate round of summary judgment briefing directed to a heavily fact-dependent issue before ordinary merits and class discovery could even begin.

Moreover, Defendant's request to stay class and third-party discovery while simultaneously litigating factual issues regarding the source and use of Plaintiff's number is particularly inappropriate because the discovery Defendant seeks to delay substantially overlaps with discovery relevant to Plaintiff's claims and class certification issues. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. September 15, 2014). The Court could deny the motion to bifurcate for this reason alone. *See id.* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, LLC*, 2020 U.S.

12

Dist. LEXIS 9007, *5 (N.D. Oh.) ("bifurcating the claims at this stage might result in a second, redundant round of discovery and another round of dispositive motions, which is certainly not efficient nor expeditious.")

Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff' individual claims and issues of class certification. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the Plaintiff' underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the Plaintiff' cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted). Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'")

The inevitable disputes about what qualifies as merits vs. class discovery is thus a second reason to deny the request for bifurcation. As another Second Circuit District Court held while denying a similar request for bifurcation of discovery:

> In fact, bifurcation would have the opposite effect. Much of the discovery sought appears [*7] relevant to both the class and individual claims, including documents concerning Plymouth's telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers, as this information is relevant to the issues of both vicarious liability for third-party conduct and willfulness. *Accord* DE [25] (Defendant arguing that it has a "strong defense" because it cannot be held "vicariously liable" for the conduct at issue as it relates to Plaintiff and recognizing the difference in recovery for a "willful" violation of the statute).

13

*Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL, 2016 U.S. Dist. LEXIS 6778, at \*6-7 (E.D.N.Y. Jan. 12, 2016). Other courts in TCPA cases have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at \*2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at \*6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at \*3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."). As another federal court held earlier this year while rejecting bifurcated discovery in yet another TCPA case, "Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation." *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at \*3 (D. Md. Jan. 15, 2025).

Indeed, as another Court in Texas held recently while rejecting a substantially similar bifurcation request from a TCPA defendant highlighting the signification overlap between merits and class certification discovery in a TCPA case while providing an overview of relevant case law:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

> And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally

14

involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). Accordingly, the evidence indicates not that bifurcating discovery would be an efficient way of conducting this litigation but instead that it will result in needless delay.

The delay from segmented discovery periods would in fact prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *See, e.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). The risk to the putative class members' interests is not merely hypothetical.  Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al.*, No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing,*

16

*Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009).

By contrast, Defendant will not be prejudiced if Plaintiff is permitted to proceed with discovery in the ordinary course. As another federal court explained in denying a motion to stay discovery in a TCPA case:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
>        \*       \*       \*
>
> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

The Defendant has not carried its burden to justify an artificial limitation (never mind two) on discovery. The Federal Rules provide ample protections to Defendant for any requests that are expensive, burdensome or simply dipropionate to what is needed to advance this case.

### b. Any bifurcated discovery should address class certification issues first.

Even if the Court were inclined to sequence discovery in some fashion, Defendant's proposed approach is backwards. Defendant asks the Court to halt class and third-party discovery

while conducting individualized "threshold" discovery directed solely to whether Plaintiff's cellular telephone number qualifies as residential under the TCPA. But courts addressing TCPA class actions routinely recognize that discovery concerning Rule 23 issues substantially overlaps with merits discovery and therefore prioritize class-certification-related discovery first—not individualized mini-summary-judgment proceedings on the named plaintiff's claim. Indeed, in another TCPA class action currently pending in this District involving Mr. Newell, Judge Spector recently adopted precisely that approach. *See Newell v. Foley Carrier Services, LLC,* No. 3:25-cv-02043-KAD, ECF No. 44 (D. Conn. May 6, 2026). There, after specifically discussing "discovery on class certification, the merits, and the overlap between them" during the Rule 16 conference, the Court entered a scheduling order focusing discovery first on "Plaintiff's individual claims and the class action requirements of Fed. R. Civ. P. 23" prior to class certification proceedings. *Id.* The Court then established a schedule directed toward class certification briefing before any subsequent merits schedule would be entered. *Id.*

While the overlap between class and merits issues supports denying bifurcation altogether, prioritizing class discovery is a preferred approach to what the Defendant seeks here, which is to prevent Plaintiff from obtaining discovery concerning Defendant's telemarketing campaign, vendor relationships, messaging records, dialing records, and related information central to Rule 23 issues, while simultaneously litigating factual defenses concerning Plaintiff's individual number. But many of the same facts relevant to Defendant's asserted "threshold" issue also bear directly on class certification issues, including commonality, predominance, ascertainability, Defendant's sourcing and use of telephone numbers, and Defendant's telemarketing practices generally.

18

Moreover, Defendant's proposal would effectively permit Defendant to litigate a fact-intensive summary judgment motion concerning Plaintiff's individual circumstances while withholding discovery relevant to whether Defendant engaged in a broader uniform telemarketing campaign affecting the proposed class. That sequencing improperly elevates Defendant's individualized factual defense over the Rule 23 issues that will ultimately govern the scope and structure of this litigation.

Judge Spector's recent scheduling order demonstrates the more appropriate and efficient course. If the Court elects to sequence discovery at all, discovery should proceed in the ordinary course with a focus on issues relevant to Plaintiff's claims and class certification—not through an artificially narrow "threshold discovery" process directed solely to Defendant's disputed factual assertions regarding Plaintiff's telephone number.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss or, Alternatively, for Limited Threshold Discovery and Early Summary Judgment Schedule in its entirety.

Plaintiff has plausibly alleged that his cellular telephone number is a residential number protected by the TCPA and that Defendant sent unlawful telemarketing text messages to that number despite its registration on the National Do Not Call Registry. Defendant's arguments rely on disputed factual assertions and extrinsic evidence that cannot properly be resolved on a Rule 12(b)(6) motion. Likewise, Defendant has failed to demonstrate that its proposed "threshold discovery" procedure would promote efficiency, conserve judicial resources, or avoid prejudice. To the contrary, the requested sequencing would create duplicative proceedings, delay discovery relevant to class certification and the merits, and increase the risk of loss of relevant evidence.

19

Accordingly, Defendant's motion should be denied in full, and discovery should proceed in the ordinary course.

DATED this 20th day of May, 2026.

PLAINTIFF,
By his attorneys,

By: _s/ Anthony I. Paronich_
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

20